Please the court, Thomas John Trigo for the petitioner, Ms. Han. This case is analogous to Yemeni Bear as well. The pivotal issue in this case was an ID document, a resident document that was submitted to the court and then later on sent to forensics. And the forensics came back saying that it was a counterfeit document. Ultimately, the judge denied the case on credibility based on this actual document, and that was the main reason for the denial. It was upheld again, the same denial was upheld by the Board of Immigration Appeals. Now under Yemeni, it's very analogous in the same facts. There she submitted a birth certificate that was, not a birth certificate, I misstate for the record, a medical document that was ultimately determined to be counterfeit. And the judge in there denied the case for the same basis and the same reasons. If you actually look to whether or not this client had knowledge of this document being fraudulent or counterfeit, there are several factors that actually help her to determine that she did not know. For instance, we don't have a positive inference on the record of how she obtained the documents. We do know, though, in the record on page 134 and 135, lines 8 and 9, that before entering the United States, in Canada, in Vancouver, all of her ID, everybody who was in there that was being smuggled in, all of their IDs were actually taken off of them. They have no ID on them at all. So she came to this country with no ID. So ultimately we can infer that every ID that she received and submitted either with her asylum application or to the court was sent to her because she did not have any IDs with her. So at this point, this document, her resident document, ID document, was submitted to forensics and it came back. And in there, actually the document is half genuine and half counterfeit, which is kind of interesting. If you actually go to the forensics report, it says that the outer laminate covering the card insert conforms with the specimens in the FDL reference collection. However, that the insert itself contains security features and fine details that are not presented with the exemplars that they have on file. So unless my client is an expert in determining those fine details and security features, she would not have known on its face because half of it, the laminate itself, is actually real and genuine. So at this point, she presents this document. The judge, in his finding, says, well... How did she get the ID card in the first place? Again, it's never established in the record. It's only established that she had no identification documents when she entered the United States. So it's really not determinative who sent it to her or how it was sent to her at all. But she did not have it with her at all, as she stated on the record when she was coming into the country from Vancouver. So at this point, the only logical inference we can make is that she had to get it from someone that had it in their possession other than her at some point. Well, logical inference. Why would somebody else give her a counterfeit card if she, in fact, had a genuine card? I mean, who knows what they used that card for and the insert for? I mean, you're asking, because it was given to a smuggler at some point, what their purpose is or what other documents, what they may use for. To me, I don't know. I couldn't answer that question why a smuggler would then alter a card and then ultimately get it back to the hands of the smuggler. So if you can't give us an explanation, why is that a logical inference that, in fact, she is who she says she is? She has legitimate ID but didn't have it with her. Instead, somebody produced a counterfeit card and she used the counterfeit card not knowing its counterfeit. I mean, it's possible, but is that logical? It's possible and correct. It may be not logical. So why is the IJ compelled to conclude that somebody else counterfeited a card for unknown reasons and gave it to her and she used that instead of a genuine card which she presumably had available to her? Because when she requested the document, at a glance, if you look at it, half of it is genuine. I mean, literally, the outer coding is real as supported by the expert. So how would she know, unless she's an expert, as you said in yesterday's case, as an appraiser, she's not an expert. So she wouldn't have known those documents being what it is that's being reported. That's not the question before us, and it's a very simple question before us. You've got to, well, I don't know what you've got to do, but we look to see if the record compels reversal, don't we? Yes. And that's the burden, then, for you to show us why this record compels reversal. And it's the same thing with the case before us. If you don't answer that question, if you don't show us, then I don't know how we're going to say it does compel reversal. Well, in this instance, yes, I do. We certainly don't know how she got it. You don't want us to imply how she got it. The other documents that were submitted on the record do establish who her identity is, and it was supported through testimony. Her household registry, which does show where she was born. It states where she worked, where she lived. So she proved her identity. Ultimately, the judge did not deny the case on identity. He denied it on credibility because he found no other reason for her to actually submit a fraudulent document but to misrepresent to the court. But you're relying on Yemeni for a grant of petition. Correct. That's my argument, that she had no idea. And here's the other issue. She supplied at the time and request, if you go through the history of the courts, the submitted over for another calendar for documents to be sent, other documents to be sent to forensics. However, Judge Duck comes on the record and starts doing the, marks the evidence and does the trial. So it wasn't that she was trying to hide her identity. She wasn't trying to bolster her claim. She just was establishing who she was, and I believe that the judge found that she had met that burden because he never, in the decision, denies that she never met, you know, established who she was. Thank you for your time. Thank you. I will reserve two minutes. Same with balance rebuttal? Yes. Sure. Thank you, Your Honor. And we'll hear from the government. Good morning, Your Honors. May it please the Court, Alexander Lutz for the Attorney General. Your Honors, the record in this case does not compel the conclusion that Ms. Han testified credibly where she submitted a demonstrably counterfeit Chinese resident identification card in support. Mr. Lutz, would you kindly direct me to the record where there is any evidence that Han knew or should have known that the document submitted was fraudulent. But keep in mind the rule of Yemeni. Absolutely, Your Honor. Let's go directly to Yemeni Barry. There is no statement in the record that indicates directly that she knew or did not know. She did testify at pages 158 and 159 of the record that it was her identification card. She said, my ID is not counterfeit. That could support an inference that since it's her card that she recognizes it, she knows where it was obtained and would presumably then know it was counterfeit. No, no, no, no, no, no. I can say it's my driver's license without, that's been found in the hall without saying where I got it or when I got it. That's true, Your Honor. And I'm not saying that this is direct evidence that shows she knew. I'm just saying it's the closest thing that is in the record. That's what I'm looking for. Some evidence that would sustain the adverse credibility finding that the counterfeit documents show that she has adverse credibility that requires a showing also, a predicate showing of knowledge or should have known, notice knowledge, that the documents were fraudulent. That's what I'm after. You've told me that there's AR 158, 159, there's some testimony that she recognizes this as being her ID card. Let's see if there's something else. There's nothing else, Your Honor. All right. Thank you. We're not looking, the type of evidence you're looking for is not in this record. But our argument is that Yemeni Berry doesn't control in this case. Wait a minute. You can't argue without evidence to budge us the argument. Well, the argument, Your Honor, is that Yemeni Berry doesn't control here in the type of evidence that Your Honor is asking about isn't required. That type of argument doesn't require that sort of evidence. I'm sorry. Did I state that clearly? No. Very well, Your Honor. If I understand your question right, it's where's the evidence that shows directly that she knew at the time she submitted it. Not directly. Directly or inferentially. Circumstantial evidence is every bit as probative as direct evidence. Show me some circumstantial evidence or direct evidence of knowledge or reason to know that the document was counterfeit. That's the question. Your Honor, there is no such evidence in this record. Okay. Thank you. But, Your Honor, I would... So give us the legal reason why Yemeni Berry doesn't control. Thank you, Your Honor. The reason Yemeni Berry doesn't control in this case is because there are no facts that would indicate that she did not know. There are no facts that would require the type of information that Your Honor is asking about. In Yemeni Berry, the petitioner received the document from an outside source and there was reason based on that record to suggest, there was reason to know, excuse me, Your Honor. There was evidence in that record to suggest that there would be no reason for the petitioner to have known that document was fraudulent. So you say that the government proves a positive by showing that the defendant can't prove a negative. No, Your Honor. Our argument is that Yemeni Berry stands for the proposition that where there's something in the record that indicates the petitioner wouldn't have known the document was fraudulent, we need to look for evidence showing that she did, in fact, know where the document came from. So the initial burden of proof is on the petitioner to show that there is some basis for her not knowing where the document came from. No, Your Honor. I don't think it's a question of burden of proof. I think it's a question of the type of inquiry that we're called upon to pursue based on the facts present in the record. Yemeni Berry had very unique facts, Your Honor. Yemeni Berry was a case where a petitioner submitted a counterfeit hospital report, but she didn't get the hospital report herself. Her sister procured it for her. She simply submitted to the immigration court what her sister gave her. The court recognized, under those facts, there was reason to suggest she had no idea that that document was counterfeit. The pall on credibility that would normally be cast by submitting a counterfeit document couldn't be imputed to her because she had just submitted something another person gave her. Or I would draw the court's attention also to another case with similar facts, Abramian, an unpublished decision from this court in 2014. In that case, Yemeni Berry controlled where a petitioner, again, submitted a document she obtained from a third party and presumably would have had no knowledge it was counterfeit. The document in question there was a birth certificate, but she didn't get the birth certificate herself. Was Han asked at the hearing where she got the document from? I don't believe she was asked that question in those precise words, Your Honor, but... Well, let's not play games. Was the substance of that question asked her? I don't believe it was, Your Honor, but she was confronted directly with a report from the forensic document lab suggesting that the document was counterfeit. And her only response was, it's not counterfeit. My ID is not counterfeit. In no way did she explain where she got the document, even after being placed on notice that it was counterfeit, that there was suspicion here. She never explained where she got it. She never disclaimed it. She never said she didn't know it was counterfeit. Your Honors, I'd like to, if I could, draw the court's attention to CADCA, 618-Fed 3rd-996. We'd respectfully suggest that that case controls. In that case, the court distinguished Yemeni Berry and upheld an adverse credibility finding based on a forensic document laboratory report saying that one document of many documents that had been submitted was counterfeit. And in that case, like in this case, the immigration judge never rendered a specific finding as to whether the petitioner knew at the time of submission that the document was counterfeit. If it pleased the court, I'd just read directly a brief passage from that opinion. The court in CADCA stated, although it would have been preferable... I didn't get the citation. Is that in your brief, or...? I'm sorry, Your Honor, that case is not cited in our brief, but I'm expanding here on an argument we made at pages 21 and 22 of our brief. What's the citation again? Here, Your Honor. It's 618-Fed 3rd-996, K-H-A-D-K-A, CADCA. 618-Fed 3rd-996? Yes, Your Honor. What's the name of the case? K-H-A-D-K-A, CADCA. K-H-A-D... Now, Your Honors, in CADCA, the court stated, although it would have been preferable for the immigration judge to make a specific finding that CADCA knew about the circumstances of the article's publication, the immigration judge's failure to do so is not enough to support granting the petition. An expert witness's testimony, and the expert witness had testified that the document was counterfeit, the expert witness's testimony, combined with CADCA's failure to disclaim the article or provide any explanation for how it came into his possession without knowing that it was never circulated, which is what made it counterfeit, supports the conclusion that CADCA was aware of the circumstances of the publication. On appeal, while challenging the finding that he misrepresented the document's history, CADCA still does not claim he was misled to believe the article was ever circulated. That is sufficient under our case law. Your Honor, I'd also draw the court's attention... This is an article published in some magazine that he submits and turns out to be counterfeit? This is not an identification document, is it? It was not an identification document, Your Honor. It was a newspaper article that a newspaper... So here's a case that you haven't cited in your brief that deals not with identification, that you want us to consider as analogous as establishing the principle that if a witness doesn't testify as to his lack of knowledge as to where the document came from, it's presumed that he vouches for its authenticity? Your Honor, I think this case is directly on point because it answers the question you're asking based on Yemeniberry. The principle from Yemeniberry is that where there's something to indicate a petitioner would not have known a document he or she submitted is counterfeit, we must look further. We must then determine if the petitioner did, in fact, know at the time of submission the document was fraudulent. In Katka, on the other hand, where there are no such facts, where a petitioner submits a counterfeit document but never disclaims it, never explains where she got it, never explains how she didn't know that it was counterfeit, the mere submission of that document can be enough. Your Honor, Judge Clifton actually cited to this case in 2011 in an unpublished decision called Minduan Lin. Gee, how could I have possibly have forgotten that, gee? Well, I thought it may be helpful to remind you, Your Honor. In Minduan Lin, you distinguished Katka and Yemeniberry in a situation where a petitioner had submitted a counterfeit document and, I'm quoting now, had every opportunity to explain his submission of the falsified document but gave wholly unsatisfactory explanations. In this case, unlike in Yemeniberry, unlike in Abramian, there's no third party that obtains a document. There's no reason to believe that Ms. Han didn't know this document was counterfeit. And when she was told it was counterfeit when the report was filed and when she was cross-examined about it, she never disclaimed it. She never said, I didn't know that was counterfeit. She never explained where she got it. There simply aren't facts in this case like in Yemeniberry and like in Abramian to trigger that further inquiry of what she knew at the time the document was submitted. And, Your Honors, based on those facts, we'd argue the record does not compel the conclusion that she testified credibly. Just for the benefit of rebuttal, would you state what you think the narrow question is before us on this record? Yes, Your Honor. I think the narrow question is whether her submission of the fraudulent ID card on its own can support an adverse credibility finding. Are there any further questions from the panel? Thanks very much, Your Honors. Thank you. Rebuttal. What was very interesting about my colleague's argument was there's not enough facts to determine whether or not she had knowledge of this document was in fact fraudulent or counterfeit. She wasn't, she didn't have any explanation. I'm gathering the burden is on the person who submits the counterfeit document to show knowledge, a lack of knowledge, whether a question is raised or whether it isn't raised. Is that correct, the situation? Yes. And, unfortunately, I can't explain the trial tactics of another attorney, why they failed or did not do, ask these questions on redirect. Yeah, but when we review it, we look to see what is there in this record that compels reversal? And don't we have to find something? Yes. And what will we find? In this case, there's actually not enough evidence or facts to make the determination. And we're asking actually to remand the case back down for further fact finding in order to fully complete the record for credibility determination. And as in, we stated, as I stated before, the only fact we have was that she came into this country with no identification document. So, at this point, she lost chain of custody of this document. Whatever happened to it afterwards, obviously, she had no knowledge of this because she never testified in the record that she had seen this. It was issued to her in China, that she had it with her at all times, that she presented it to the court. So, the only thing we have in the record is that she didn't have this document. And it was obviously either given to her or sent to her some way, somehow. So, if we're requesting to remand this case back for further fact finding so a fair credibility determination can be made. And that's what we're requesting, the petitioner's request. I thank you for your time. Thank you. Thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Farris, Clifton, Bea